## Layton *against* Paull.

The practice of including a quantity exceeding ten per cent. more than the warrant called for, was sanctioned by the proprietaries' land officers, and has been recognized by repeated acts of assembly; and is not now to be questioned, except in cases where it interferes with the rights of others.

If a warrantee procure a survey to be made on his warrant, and many years after procure another to be made excluding part of the land, and it be appropriated by another, the warrantee thereby loses his right to it. Whether the second survey was made at the instance of the warrantee is a fact which should be submitted to the jury.

ERROR to the common pleas of *Fayette* county.

Ejectment by James Paull, Jun., against Thomas Layton.

His Honour, who delivered the opinion of the court in this case, prefaces it with all the material facts.

*Dawson*, for plaintiff in error.
*Ewing*, for defendant in error.

The opinion of the Court was delivered by

HUSTON, J.—The following case is presented by this record: The plaintiff below, James Paull, produced a warrant to Jonathan Smith for two hundred acres, dated the 29th of August 1786, calling for the land in question.

A survey on the 22d of October 1787, of two hundred and sixty-nine and a half acres, returned into the surveyor-general's office on the 16th of March 1788.

A deed of conveyance from Jonathan Smith to James Paull, Jun., dated the 14th of September 1831; and a patent to James Paull, Jun., dated the 9th of January 1832.

This title on the face of it was regular and perfect; but in the course of the trial the defendant showed that another survey had been made on this warrant on the 23d of March 1815; and this contained only two hundred and five acres. It was returned by the same deputy-surveyor who made the former survey in 1787; but he was very old, and the work on the ground was done by an assistant. This gave rise to the contest.

The defendant showed a warrant to Robert Espy, dated the 24th of February 1815, for eighty acres; the warrant called for all those adjoining except the plaintiff's, which was settled before that time, and must have been known to Espy.

A survey was made on the 23d of March 1815, including the part thrown out of plaintiff's survey on that day; it was made by the same assistant of the deputy-surveyor who did the work on Smith's warrant. There was next shown a regular title from Espy

[Layton v. Paull.]

to the defendant, who lived adjoining at the time this surveying was done.

A matter was brought into discussion again in this case which has been so long and so often settled that counsel of such respectability as were concerned in this case ought not to treat it as open for discussion. It is this : by a regulation of the proprietary office, in the spring of 1767, deputy-surveyors were directed not to include in the survey more than ten per cent. above the quantity called for by the warrant or location; and, in the fifteenth section of the act of the 8th of April 1785, after directions as to the mode of making surveys, it is enacted as follows : " And in case any such survey shall be found to contain a greater quantity of land than is mentioned in the warrant on which it shall be made, so that such excess be not more than one-tenth of the number of acres mentioned in such warrant, besides the usual allowance for highways; the return thereof shall nevertheless be admitted under the said warrant, provided the person entitled pays, &c." This law does not prohibit positively the acceptance of returns of surveys containing more than ten per cent. over the quantity called for by the warrant. When we recollect that in a survey made so as to be included by more than four lines, and by every angle but right angles, the surveyor cannot ascertain the quantity he has run round, until he goes home and makes a calculation. When we recollect that at the date of that law much more than half the state was a wilderness; that the surveyor often went many miles from home, and often many miles from any house, to make a survey ; that he often made many surveys while out on a tour, and had not a shelter or other conveniences for making calculations until he returned home; that after making his calculation it would often cost a day's journey to make an alteration in the survey, and that he could not honestly do it without sending for the owner to ascertain from what part of the survey he should cut off the surplus, it is not surprising that the surveyor-general constantly received, and courts have constantly sanctioned, surveys containing more than ten per cent. above the quantity called for by the warrant; *provided the survey, as made and returned, did not interfere with the claim of any other person at the time the survey was made and so returned.* By the act of the 2d of April 1811, this practice was recognized and expressly enacted to be the law in all cases of surveys before that time; and again sanctioned as to surveys made or to be made by the act of the 13th of March 1817. There was no injury to any party. The state was to be paid for it at the same rate as other lands, and no other person was affected or injured. The judge properly decided that the quantity in the plaintiff's survey of 1787 was no objection to it; and, I repeat, counsel ought no longer to make it a topic in a cause; unless where, at the time, it affected some third person.

Where a survey has been made and returned in any respect differently from the wishes of the owner, he may petition the board of

property, who have the power to make an order of re-survey, and in all proper cases do so, whether to avoid an interference or to throw out where too much, (this is not often done,) or to enlarge the survey where too small, and where there is vacant land adjoining. And I am not aware that, after a survey made and returned, there is any other regular mode of obtaining a re-survey. Nor do I suppose cases can, since 1770, be found where the surveyor-general has alone made such order. It was admitted that no petition to, or order of, the board of property existed in this case.

Where a warrant has issued and no survey is made or none returned, and the warrant is mislaid or lost, the owner, on stating this, can get another copy of the original warrant remaining in the land office, and have it directed by the surveyor-general or his chief clerk to the proper deputy-surveyor to be executed. This is not an order of *re-survey*; it is obtained on the allegation that no survey has been made, and that the copy of the warrant formerly directed to the deputy-surveyor is lost; for, if the former copy of the warrant remains in the deputy-surveyor's office, another is of no use. Such a copy of the warrant was produced in this case; and on such a copy of the warrant, directed to the deputy-surveyor, " execute this warrant and make return to surveyor-general's office," was the second survey made. The judge below was right in not calling it a re-survey; it did not purport to be so; it followed the old lines to a certain extent. It stated there was a house and cleared land within the survey; but no reference is found to a former survey, or to the fact that a part of the former survey was thrown out. No proof was given, or pretended, that the owner had notice to attend and point out in what part of the survey part should be rejected, and what part should be retained; but though bearing no intrinsic marks of being the act of the owner, or with his knowledge, it was possible it might be; and, *prima facie*, the judge told the jury it would be taken to be his act; and he left it to them to decide from the evidence whether or not the second survey was or was not procured by the owner of the warrant. It was evidently obtained at the instance of the owner, or of those under whom the defendant claimed. They knew when the part was thrown out; and the same running of lines which excluded it from Smith's warrant included in and made defendant's survey. Perhaps we have not all the testimony; but we have enough to show that the defendant had no right to complain of the judge in submitting it to the jury to decide at whose instance the second survey on the plaintiff's warrant was made. If the owner of Smith's warrant procured the second survey, and threw out the part in dispute he could not recover it. If that was not his act, no other person could procure it to be done, so as to affect the right which that warrant, survey and return vested in the owner. It may be assumed that the deputy surveyor was not guilty of intentional misconduct, that he had forgotten his former survey; but whether this was so, or whether he and his assistant knew of and concurred

[Layton v. Paull.]

in the management, makes no difference. If the owner of the warrant in the name of Smith knew nothing of a second survey it was invalid and inoperative as to him, and cannot destroy his right.

If the second survey was procured without the knowledge and against the consent of the owner of the warrant to Jonathan Smith, the warrant to Espy is no better than any younger warrant laid on land already surveyed and returned on an older right; and the purchaser of it from Espy will have no better right than Espy had; that is, a right voidable until made good by twenty-one years possession. If the owner of the Smith warrant was present, and heard the defendant agreeing to purchase Espy's right, and if he knew that claim interfered with his land, he was bound in honesty to give notice, and if silent then might be estopped thereafter; but where a man has a warrant, survey and return, he is not bound to inquire into every sale in the county to see that they do not interfere with him. To be affected and postponed in favour of an inferior title, the owner of the oldest right must have actual notice; he must know that an innocent person is about to pay or to expend money under a mistake; and his being silent, if present in such a case, is so unfair, that he may properly lose his right; but nothing like this appears in this cause. That this claim of the defendant's was sold once or twice does not affect the plaintiff unless he was present at such sale, and knew it embraced part of his land and concealed his knowledge.

Judgment affirmed.